# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

KENNETH GREGORY,

      Petitioner,

-vs-                                        Case No.  8:09-CV-213-T-30MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se,* initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). On March 6, 2009, he filed an amended petition (hereinafter "petition") (Dkt. 5). Petitioner challenges a 2004 conviction for first degree murder entered by the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent filed a response to the petition (Dkt. 16). Notwithstanding that Petitioner was granted leave to file a reply to the Respondent's response, he did not do so (see Dkt. 7 at pg. 4).

Respondent does not challenge the timeliness of the petition (see Dkt. 16 at pg. 3). The matter is now before the Court for consideration on the merits. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2010).

**Background**

In 2004, Petitioner was convicted by a jury of first degree murder (Respondent's Ex. 1, Vol. I at pg. 66).  He was sentenced to life in prison (Id. at pg. 70).  He appealed the conviction.  The state appellate court, however, affirmed his conviction on March 10, 2006.  *See Gregory v. State*, 923 So. 2d 1170 (Fla. 2d DCA 2006) [table].

On April 28, 2006, Petitioner filed a motion for post-conviction relief in state court pursuant to Florida Rules of Criminal Procedure, Rule 3.850 (Respondent's Ex. 6).  The state court, however, denied the 3.850 motion on July 31, 2006 (Respondent's Ex. 7).  Petitioner appealed, but the state appellate court affirmed the denial of his 3.850 motion on February 21, 2007.  *See Gregory v. State*, 949 So. 2d 1041 (Fla. 2d DCA 2007).

On October 16, 2007, Petitioner filed a second 3.850 motion, which was denied (Respondent's Exs. 13, 14).  Petitioner appealed, but the state appellate court affirmed the denial of the second 3.850 motion on September 26, 2008.  *See Gregory v. State*, 991 So. 2d 864 (Fla. 2d DCA 2008).

Petitioner signed his original petition for federal habeas relief on February 5, 2009 (Dkt. 1).  He filed his amended petition (Dkt. 5) on March 6, 2009, in which he raises three claims of ineffective assistance of counsel:

1.  Trial counsel was ineffective in advising Petitioner not to testify at trial;

2.  Trial counsel was ineffective in failing to call a witness, Russell Aaron, to testify on behalf of the defense; and

3.  Trial counsel was ineffective because he represented Petitioner while under a conflict of interest since counsel had previously represented a State witness, James Shaw.

## Standards of Review

AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

A Defendant has a Sixth Amendment right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). A lawyer is presumed to be competent to assist a Defendant and the burden is on the Defendant to demonstrate that his lawyer has been ineffective. *United States v. Cronic*, 466 U.S. 648, 658 (1984). A conviction will be vacated on ineffective assistance of counsel grounds if the Defendant can prove (1) that counsel's performance fell below an objective standard of reasonable professional assistance, and (2) the Defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A Defendant is required to prove both prongs of

the *Strickland* test and a failure to prove one will result in a rejection of the claim. *Id*. at 697. "There is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the Defendant makes an insufficient showing on one." *Id*. Thus, if the Defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the Defendant's claim without determining whether the counsel's performance was deficient. *See Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the claims raised by Petitioner, § 2254(d) governs the review of his claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

## GROUND ONE

In Ground One, Petitioner complains that trial counsel was ineffective in advising him not to testify at trial. He claims counsel advised him not to testify because the nature of his prior convictions would be automatically exposed to the jury. He also complains that trial counsel failed to advise him that the scope of the State's cross-examination would be limited by counsel's direct examination. He asserts that had he testified, he would have explained that he killed the victim "in the heat of passion." He also avers that his testimony would have refuted the State's evidence that he was a violent person and had punched Russel Aaron on the night of the murder.

Initially, the Court agrees with Respondent that Petitioner's claims in Ground One are procedurally defaulted.[1]  In his first 3.850 motion, Petitioner asserted counsel was ineffective in advising him not to testify.  He asserted, however, that he chose not to testify because counsel told him that "his past would be used against him and be brought up at trial (even though it is non-violent)."  (Respondent's Ex. 6 at pg. 2).  Thus, the claim Petitioner presented to the state court in his first 3.850 motion was that counsel was ineffective in advising him not to testify because his prior convictions were for non-violent offenses, and therefore his prior record could not be used against him at trial.  Petitioner did not, however, present to the state court the claim that counsel was ineffective in failing to explain to him that the State's cross-examination would be limited by counsel's direct examination.  Nor did he present to the state court the claim that counsel erroneously advised him that if he testified, the nature of his prior convictions would automatically be exposed to the jury.

In his second 3.850 motion, Petitioner did assert that he decided not to testify because "counsel had misadvise[d] defendant that the nature of his prior conviction would be exposed..." (Respondent's Ex. 13 at pg. 3).  In denying the claim, the state court found that the claim was "the same claim as alleged in ground one of Defendant's first motion" and therefore was "barred by rule 3.850(f), by the law of the case doctrine, and by collateral estoppel from relitigating a claim that has already been considered and denied on the merits and affirmed on appeal."  (Respondent's Ex. 14 at pgs. 1-2).  The appellate court affirmed without opinion the denial of Petitioner's second 3.850 motion.  (Respondent's Ex. 17).

---

[1]See Dkt. 16 at pgs. 10-14.

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)(quotation omitted).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892. To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States*

*v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  *Henderson v. Campbell*, 353 F.3d at 892.  The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324)  (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

To the extent Petitioner attempted to relitigate in his second 3.850 motion the same ineffective assistance of counsel claim he raised in his first 3.850 motion, he was foreclosed from doing so by Florida's successive petition and collateral estoppel doctrines. To the extent Petitioner raised in his second 3.850 motion an additional ineffective assistance of counsel claim pertaining to counsel advising Petitioner not to testify at trial, the claim was barred by Florida's successive petition doctrine. *See e.g.*, *Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Even though it appears that the specific ineffective assistance of counsel claim Petitioner raised in his second 3.850 motion pertaining to counsel's advice to Petitioner not to testify at trial was different than the claim Petitioner raised in his first 3.850 motion, the state court denied the claim because it had "already been considered and denied on the merits and affirmed on appeal." (Respondent's Ex. 14 at pgs. 1-2). Nevertheless, even if the state court would have considered Petitioner's claim in his second 3.850 motion to be a new and additional claim, this Court concludes that the state court would have held the claim procedurally barred,

because it was not presented in Petitioner's first 3.850 motion and therefore was barred by the State's successive petition doctrine. *Cf. Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court).[2]

Petitioner has neither argued nor demonstrated cause and prejudice to overcome the procedural default and has not shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of these claims. Accordingly, Petitioner's claims under Ground One are procedurally defaulted.

Finally, even if Petitioner's claim that counsel was ineffective in advising him not to testify because the nature of his prior convictions would be revealed to the jury were not procedurally defaulted, the claim would not merit habeas corpus relief. Petitioner claims that had he testified, he would have told the jury that "his mind just snapped" and that he killed the victim in the heat of passion. He also asserts that he would have testified that he never previously physically harmed the victim, even when he was angry or drunk. Finally, he states that he would have testified that he was not a violent person, did not push Russel Aaron, and was punching the walls and window because he would rather do that than harm the victim (see Dkt. 5 at pgs. 16-17).

Even if Petitioner had testified that he was not violent, did not push Russel Aaron, and punched the walls and window because he did not want to harm the victim, Petitioner still

---

[2]The Court notes that in the state court's order denying Petitioner's second 3.850 motion, the state court concluded, *inter alia*, that because Petitioner's second claim in his second 3.850 could and should have been raised in his first 3.850 motion, the claim was procedurally barred (Respondent's Ex. 14 at pg. 2).

admitted to killing the victim by strangling her. His potential testimony does not change the fact that he strangled and killed her, nor negate premeditation. Likewise, he shows no prejudice because he did not testify that he "snapped" and killed the victim "in the heat of passion." Russel Aaron testified that on the night of the murder, Petitioner was drunk, yelling and screaming at the victim, throwing objects around the home, punching and banging his head on the walls, and was "out of control." He also testified that the victim continuously taunted Petitioner regarding an affair she had with another man (Respondent's Ex. 1, Vol. II at pgs. 148-66). During closing argument, defense counsel used Russel Aaron's testimony to argue that the evidence showed that Petitioner and the victim were drunk and fighting, that the victim provoked Petitioner by continuously taunting him about her affair with another man, and that Petitioner became enraged, out of control, and subsequently killed the victim in the heat of passion (Id. at pgs. 261-64). He further argued that the evidence showed no premeditation as Petitioner did not fully-form a conscious intent to kill, but instead killed the victim in the heat of passion brought on by provocation (Id. at pgs. 264-68).

In *Purvis v. Crosby*, 451 F.3d 734 (11th Cir. 2006), the Eleventh Circuit stated:

> To establish prejudice based on a trial counsel's error: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. When we are considering defective performance at the guilt stage, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695, 104 S. Ct. at 2068-69.

Id. at 738. In light of the significant evidence of Petitioner's guilt, that Petitioner's potential testimony would have been essentially cumulative to that of other witnesses,[3] and that defense counsel vigorously argued that the evidence demonstrated that Petitioner did not commit premeditated murder, but instead killed the victim in the heat of passion, Petitioner fails to show a reasonable probability that, but for counsel's advice to Petitioner not to testify, Petitioner would not have been found guilty of first degree murder.

Accordingly, Ground One fails on the merits.

**GROUND TWO**

In Ground Two, Petitioner complains trial counsel was ineffective in failing to call Russel Aaron to testify on behalf of the defense. Petitioner asserts that Russel Aaron would have testified: 1) regarding Petitioner's and the victim's plans for the future; 2) that the victim was more often "the aggressive one"; 3) that Petitioner never previously laid a hand on the victim; and 4) that to his knowledge, Petitioner never previously talked about harming the victim. Petitioner argues that Russel Aaron's testimony would have supported his theory of defense that the killing was not premeditated. He also asserts that had Russel Aaron testified, Petitioner would not have been found guilty of first-degree murder, but instead a "lesser-included offense."

---

[3] *Cf. Van Poyck v. Florida Dep't of Corrections*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").

First, this Court agrees with Respondent that Ground Two is procedurally defaulted. In his Rule 3.850 motion, Petitioner did not present the claim that trial counsel was ineffective in failing to call Russel Aaron to testify on behalf of the defense (Respondent's Ex. 6). Instead, Petitioner only asserted that trial counsel was ineffective in failing to be prepared for trial because he did not know which witnesses to call on behalf of the defense (Id.).

To have exhausted claims of ineffective assistance of counsel, an inmate has to present the instances of ineffective assistance in a state proceeding that he asserts in his federal petition such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks omitted). "[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously." *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). Petitioner did not present to the state court his claim that counsel was ineffective in failing to call Russell Aaron to testify on behalf of the defense. Therefore, the claim is unexhausted.

In *Ogle v. Johnson*, 488 F.3d 1364 (11th Cir. 2007), the Eleventh Circuit Court of Appeals stated:

> When a federal habeas petition raises a claim that has not been exhausted in state proceedings, the district court ordinarily must either dismiss the petition, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court," *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1351 (11th Cir. 2004) (internal quotation marks omitted), or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim, *see Rhines v. Weber*, 544 U.S. 269, 277-79, 125 S. Ct. 1528, 1535-36,

> 161 L. Ed. 2d 440 (2005). "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Kelley*, 377 F.3d at 1351 (internal quotation marks omitted). The unexhausted claims should be treated as if procedurally defaulted. *See Bailey*, 172 F.3d at 1302.

*Id*. at 1370. Petitioner's claim is now procedurally barred in state court by the two-year limitation of Rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. *E.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Accordingly, since Petitioner has failed to exhaust state remedies that are no longer available, the failure is a procedural default which bars federal review of Ground Two. Petitioner has not alleged nor demonstrated cause and prejudice for his default, or that review is necessary to correct a fundamental miscarriage of justice.

Second, even if Petitioner had exhausted this claim in state court, his claim is insufficient. Self-serving speculation about potential witness testimony is insufficient to support a claim of ineffective assistance of counsel; a petitioner must present evidence about the witness testimony in the form of actual testimony, or an affidavit. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Petitioner fails to present Russel Aaron's actual testimony or affidavit indicating that he would have presented the potential testimony.

Third and finally, Russel Aaron did testify at trial on behalf of the State (Respondent's Ex. 1, Vol. II at pgs. 148-67). On direct examination, he testified that, *inter alia*, on the night

of the homicide he was at Petitioner's home when Petitioner and the victim arrived. They had both been drinking and were fighting. They were fighting because the victim was taunting Petitioner about her old boyfriend. Petitioner was in a rage and began throwing items such as a microwave oven and a stereo. He was also punching and banging his head on the walls. Russel Aaron told Petitioner to calm down. In response, Petitioner pushed him hard. Russel Aaron decided then that he needed to leave. After he went outside the home and started to walk away, he could still hear Petitioner and the victim arguing. He then heard the victim yell "no, Kenny, no." Russel Aaron stayed over at a friends house that night. He called Petitioner the next day. While on the phone, Petitioner told him that "[the victim] left me." Petitioner drove his car to pick up Russel Aaron to give him a ride to get a rental car. While in the car, Petitioner told Russel Aaron that he had killed the victim and buried her (Id. at pgs. 148-58).

On cross examination, Russel Aaron testified that Petitioner and the victim were heavy drinkers. They had a "rocky relationship." The victim would frequently talk about affairs she had with other men to make Petitioner jealous. The victim would get nasty with Petitioner and throw things at him. On the night of the homicide, both Petitioner and the victim were "out of control." The victim "kept sticking it in [Petitioner's] face about having an affair with a guy." (Id. at pgs. 158-63).

Defense counsel did elicit testimony from Russel Aaron that the victim and Petitioner were heavy drinkers and had a volatile relationship, the victim frequently got "nasty" with Petitioner and made him jealous by telling him about her affairs with other men, and the

victim threw things. Russel Aaron also testified on cross examination that on the night of the homicide the victim and Petitioner were both "out of control," and the victim was taunting Petitioner about an affair she had with another man. Therefore, defense counsel did essentially elicit testimony from Russel Aaron that the victim was "aggressive." Further, during closing argument defense counsel argued that although the witnesses testified about the arguments the victim and Petitioner had in the past, they never testified about any physical contact between Petitioner and the victim (Id. at pg. 262). Therefore, even though Russel Aaron did not testify that to his knowledge Petitioner never harmed or talked about harming the victim in the past, defense counsel emphasized that Russel Aaron and the other witnesses never testified that Petitioner previously harmed the victim. Consequently, the Court concludes that defense counsel was not deficient in failing to call Russel Aaron to testify on behalf of the defense, and Petitioner does not establish prejudice.

Further, Petitioner argues that had Russel Aaron testified that Petitioner and the victim had plans for the future, and Petitioner never harmed the victim in the past, the jury would have concluded that the murder was not premeditated. However, in Florida "[p]remeditation can be formed in a moment and need only exist 'for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.'" *DeAngelo v. State*, 616 So. 2d 440, 441-42 (Fla. 1993) (quoting *Asay v. State*, 580 So. 2d 610, 612 (Fla.), *cert. denied*, 502 U.S. 895 (1991)). Therefore, merely because Petitioner and the victim may have had future plans with each other, and Petitioner never previously

harmed the victim does not negate premeditation.[4]

The evidence showed that Petitioner was enraged, throwing objects, and punching the walls because the victim was taunting him about an affair she had with another man. Petitioner gave a statement to the police that he started choking the victim after she started screaming "kill me." (Respondent's Ex. 1, Vol. II at pg. 200). Petitioner then stated that he stopped choking her (Id.). The victim, however, again screamed "kill me." (Id.). Therefore, Petitioner moved her to a bed, got on top of her, and began choking her again (Id.). James Shaw testified that Petitioner told him that after Petitioner had choked the victim, she "was still gurgling a little bit, so he put a pillow over her face and sat on her." (Id. at pg. 240). After the victim died, Petitioner buried her body (Id. at pg. 201).

In Florida, premeditation may be inferred from:

> the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of the victim is concerned.

*Jackson v. State*, 575 So. 2d 181, 186 (Fla. 1991) (quoting *Sireci v. State*, 399 So. 2d 964, 967 (Fla. 1981)). There was evidence of previous difficulties between the Petitioner and the victim. There was also significant provocation, i.e., the victim provoking Petitioner by taunting him regarding her affair with another man, that caused Petitioner to become "out of

---

[4]See *Blackwood v. State*, 777 So. 2d 399, 406 (Fla. 2000) ("That there was no evidence that appellant had formed a criminal intent in the days or weeks prior to the murder does not preclude the conclusion that the appellant formed the necessary intent while inside the victim's house on the day of and at the time of the murder.").

control" and throw objects and punch the walls.[5]  Petitioner, however, admitted that he started to strangle the victim only after she stated "kill me."  Further, he admitted that he stopped choking her, but then moved her to a bed and started choking her again after she continued to say "kill me."[6]  Likewise, there was evidence that after he stopped choking her, he placed a pillow over her face and sat on her because she was still breathing.[7]  Given the time and forethought that would have been required, there was sufficient evidence to support a finding of premeditation.  Accordingly, Petitioner fails to demonstrate prejudice as a result of defense counsel not calling Russel Aaron to testify on behalf of the defense.

For the foregoing reasons, Ground Two does not warrant relief.

**GROUND THREE**

In Ground Three, Petitioner complains that trial counsel was ineffective in representing Petitioner at trial while under a conflict of interest since counsel had previously represented a State witness, James Shaw.  Petitioner asserts that the conflict of interest prejudiced him because "[t]rial counsel's representation of Shaw would not allow counsel to properly cross examine Shaw due to attorney client privilege."  (Dkt. 4 at pg. 8).  Specifically, Petitioner asserts that because counsel had previously represented Shaw he: 1)

---

[5]"A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder in the first degree, although the passion does not entirely dethrone the actor's reason."  *Whidden v. State*, 64 Fla. 165, 167 (Fla. 1912).

[6]*Cf. Johnston v. State*, 863 So. 2d 271, 285-86 (Fla. 2003) (finding evidence sufficient for the jury to find premeditation where "the strangulation in this case was not a constant, continuous compression, but was 'more of a manual throttling . . . meaning it was more pressure, release, pressure, release' " (omission in original)).

[7]*See Blackwood*, 777 So. 2d at 406-07 (finding evidence sufficient to support jury finding of premeditation where defendant had suffocated the victim by both manual and ligature strangulation, placing soap and a washcloth in the victim's mouth, and putting a pillow over the victim's face).

failed to question Shaw regarding Petitioner's statements to him; 2) was reluctant to aggressively cross-examine Shaw; 3) and failed to challenge Shaw's credibility by questioning him about his prior convictions. Petitioner submits that had counsel properly cross-examined Shaw, the jury would have found him not guilty of premeditated murder because Shaw's testimony was the only evidence supporting the element of premeditation.

In his first state Rule 3.850 post-conviction motion, Petitioner presented a claim that counsel was ineffective due to a conflict of interest in that he previously represented Shaw (Respondent's Ex. 6). In the 3.850 motion, however, Petitioner asserted only that counsel "could not question the state witness as deeply as he could have without violating attorney-client confidentiality." (Id. at pg. 7). In denying the claim, the state court stated:

> Defendant claims counsel was ineffective based on a conflict of interest. Defendant alleges counsel previously represented State witness, James Shaw. Defendant further alleges that counsel was unable to thoroughly question Mr. Shaw due to attorney client privilege. In a claim alleging counsel was ineffective due to a conflict of interest the defendant must show that an actual conflict occurred and then that he was prejudiced by the conflict. See Hunter v. State, 817 So. 2d 786 (Fla. 2002). Defendant fails to allege any specific facts regarding the alleged conflict and fails to specifically allege how he was prejudiced. This claim is denied.

(Respondent's Ex. 7 at pg. 3).

Initially, the Court agrees with Respondent that Petitioner's claims that counsel was ineffective in failing: 1) to cross-examine Shaw regarding Petitioner's statements to him; 2) to challenge Shaw's credibility by questioning him about his prior convictions; and 3) to aggressively cross-examine Shaw are unexhausted and procedurally defaulted. Petitioner did not present these specific claims to the state court in his first Rule 3.850 motion. Instead, he

asserted only that counsel failed to question Shaw "as deeply as he could have without violating attorney-client confidentiality." (Respondent's Ex. 6 at pg. 7). Therefore, the only claim Petitioner presented to the state court was that counsel was ineffective as a result of a conflict of interest because he did not fully cross-examine Shaw in order to avoid eliciting from Shaw attorney-client privileged information regarding his prior representation of Shaw. That is not the claim Petitioner presents in his federal habeas petition.[8] "[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously." *Footman*, 978 F.2d at 1211. Petitioner has neither alleged nor demonstrated cause and prejudice for his default, or that review is necessary to correct a fundamental miscarriage of justice. Therefore, Petitioners' claims in Ground Three are procedurally defaulted.

In any event, Petitioner's claim lacks merit. A criminal defendant is entitled to conflict-free representation. *Cuyler v. Sullivan*, 446 U.S. at 346. "A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993). "An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987)). "To prove that an actual conflict hindered counsel's performance, petitioner 'must make a factual showing of

---

[8]To the extent Petitioner's federal habeas petition could be construed as asserting the same claim Petitioner presented to the state court, the claim is without merit because Petitioner does not present the attorney-client privileged information that counsel allegedly tried to avoid eliciting from Shaw.

inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his interests." *Id*. "Prejudice is presumed only if [Petitioner demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. at 350).

Petitioner's alleged conflict, which was based on his attorney's former representation of a State witness, does not present circumstances showing "that his counsel actively represented conflicting interests." Petitioner only asserts that his attorney "previously represented" Shaw (Respondent's Ex. 6 at pg. 7). Petitioner's claim is not based on concurrent, multiple representation. Instead, this conflict of interest claim involves a successive, rather than concurrent, representation, as counsel was not, at the time he represented Petitioner, "actively representing conflicting interests." *Strickland*, 466 U.S. at 692. Whether the rationale of *Sullivan* applies to successive representation remains unanswered. *Mickens v. Taylor*, 535 U.S. 162, 176 (2002) ("Whether *Sullivan* should be extended to [cases of successive representation] remains, as far as the jurisprudence of this Court is concerned, an open question."); *see also Gillard v. Mitchell*, 445 F.3d 883, 891 (6th Cir. 2006) ("Because the Supreme Court has not held that successive representation gives rise to a presumption of prejudice, the *Sullivan* presumption does not control this habeas case"). Thus, there is no clearly established Federal law, as determined by the Supreme Court of the United States, applying the *Sullivan* standard to cases of successive representation. Accordingly, the state court's denial of this claim is neither contrary to

clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable application of it. Consequently, Petitioner is not entitled to federal habeas relief pursuant to Ground Three.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Amended Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 5).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed

further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on May 10, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy to: Petitioner *pro se*
          Counsel of Record